***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Pamela Young, along with the briefs and arguments on appeal. The Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission admits into evidence the packet of materials submitted by plaintiff during her oral argument before the Full Commission.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 16 May 2001 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff and defendant at all relevant times herein.
3. The defendant was a duly qualified self-insured at all times relevant with INSERVE acting as its servicing agent.
4. The parties stipulated to plaintiff's medical records from Dr. Jerry W. Brown.
5. The issues presented are:
 a) Whether the plaintiff contracted an occupational disease arising out of the course and scope of her employment with the defendant on January 10, 2000?
 b) Whether the plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 37 years old and had completed two years of college.
2. The plaintiff worked for the defendant as a Data Entry Coordinator or Data System Generalist and had been so employed for approximately eight years.
3. Due to changes in the structure of the defendant's operation, a new position of Service Office Manager was created and the position was posted on or about December 9, 1999. The plaintiff stated her interest in the position and she was interviewed by Becky Wertz, the office manager, and later by Carol West, the area manager. Angela Parker, a former employee, was also interviewed for the position. The defendant offered the position to Ms. Parker.
4. At the hearing, the testimony revealed that on January 10, 2000 Ms. Wertz told the plaintiff that the job had been offered to Ms. Parker. At that time, the plaintiff became accusatory and stated that she felt that she had been treated unfairly. Ms. Wertz called Ms. West and they listened to the plaintiff's complaints and informed the plaintiff that she could file a job grievance if she was unhappy about the decision. The plaintiff informed Ms. Wertz and Ms. West that she could no longer perform her current job and was leaving the employment. Ms. West informed the plaintiff that she would need to bring in a doctor's excuse if she was not going to be at work.
5. On February 14, 2000, Rita Wallace, the Director of employee relations and Director of risk management, met with the plaintiff to offer her the position. After being told she was being offered the position, the plaintiff left the office and went to Holly Hill/Charter Behavioral Health System for an assessment. It was recommended that she follow-up with out-patient treatment. The plaintiff also filed a claim for unemployment compensation and a discrimination claim with the Equal Employment Opportunity Commission.
6. After receiving the plaintiff's grievance, the defendant again reviewed the previous dismissal and decided to divide some of the duties of the new position between the plaintiff and Ms. Parker. The plaintiff was offered the position of Service Office Manager at a $4,000.00 raise, the same rate of pay that had been offered to Ms. Parker. Ms. Parker was given the position of Service Office Coordinator at the same amount of money previously offered.
7. On June 1, 2000, the plaintiff was terminated by the defendant for violating employer's rules regarding employees leaving the office to obtain doctor's orders. The plaintiff had previously been informed that she should not leave the office to obtain doctor's orders, as it was not her job duty.
8. On January 10, 2000, the plaintiff presented herself to Dr. Josephine Brown, family practitioner complaining of "emotional distress, weight loss, insomnia." Dr. Brown diagnosed the plaintiff with anxiety reaction and chronic depression and adjustment disorder with depression, and wrote a note keeping the plaintiff out of work for ten days.
9. Between February 9, 2000 and April 28, 2000, the plaintiff returned to Dr. Brown on several occasions complaining of anxiety. Dr. Brown prescribed Prozac for the plaintiff.
10. During the plaintiff's visits to Dr. Brown, the plaintiff never related her anxiety or depression to work. The only statement mentioning work at all occurred on January 20, 2000, wherein the plaintiff stated she had been called by the area manager to come into work on the same day that the plaintiff had been released to return to work without restrictions by Dr. Brown. Dr. Brown's medical reports also contain notes wherein Wake County Social Services contacted Dr. Brown regarding the plaintiff.
11. On March 3, 2000, the plaintiff presented herself to Suzanne Thompson, a social worker. On that date, Ms. Thompson took a so-called "psycho-social history" in which the plaintiff noted that someone else was given a position that the plaintiff had applied for and that the plaintiff left the employment with "mental depression and stress" on January 11th when she found out she did not get the job. However, Ms. Thompson also noted that the plaintiff was later offered the job. The plaintiff eventually elected to stop seeing Ms. Thompson although the plaintiff had insurance which would have covered the treatment.
12. On September 9, 2000, the plaintiff began working for Wake County Public Schools. The plaintiff also worked at the Capital YMCA.
13. On November 8, 2001, Dr. Jerry W. Noble, a clinical psychologist, performed a psychological evaluation of the plaintiff. The plaintiff informed Dr. Noble that she was not made anxious when several staff members left in August 1999. Instead, the plaintiff characterized her feelings as surprise at their departure. Dr. Noble diagnosed the plaintiff with delusional disorder, persecutory type; personality disorder not otherwise specified with paranoid, obsessive-compulsive, narcissistic and histrionic traits (principle diagnosis) and an occupational problem.
14. Dr. Noble opined that the plaintiff's conditions were chronic in nature and have existed over a long period of time, well before 1999 and in a relatively continuous fashion. He gave the further opinion that her occupational problem was not the cause of her psychological impairments, or to have been caused by a psychological impairment, and that her assertions about occupational events in 1999 and 2000 causing unprecedented psychological impairment appeared to be goal-directed.
15. The competent evidence in the record establishes that the plaintiff had difficulty performing her job duties, staying on task, and following employer's rules.
16. The competent evidence in the record fails to establish that the plaintiff's alleged occupational disease was causally related to her employment with the defendant or that the plaintiff was placed at a greater risk of developing an occupational disease over the general public as a result of the job duties characteristic of and peculiar to the plaintiff's employment.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The plaintiff did not contract an occupational disease of stress arising out of and in the course of her employment with the defendant on January 10, 2000. N.C. GEN. STAT. § 97-53.
2. The plaintiff failed to carry the burden of proof to establish that she contracted an occupational disease arising from job stress while employed with the defendant. To the extent the plaintiff experienced any stress at work, it was the result of her inability to perform her job duties and therefore cannot constitute a successful job stress claim. Because the plaintiff failed to carry her burden of proof in this case, she is not entitled to benefits under the North Carolina Workers' Compensation Act.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be DENIED.
2. Each side shall pay its own costs.
 S/______________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________________ RENE C. RIGGSBEE COMMISSIONER
 S/____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER